WEAR-BOOGHER DRY GOODS COMPANY *v.* SMITH.

Opinion delivered December 3, 1898.

TENANT BY THE CURTESY—SALE—RIGHTS OF HEIR.—A sale by a father of land of which he is a tenant by the curtesy will not affect the title of his daughter as heir of her mother, nor will she be entitled to share in the proceeds of such sale. (Page 611.)

Appeal from Howard Circuit Court in Chancery

WILL P. FEAZEL, Judge.

*R. B. Williams, Jno. M. Moore* and *W. B. Smith,* for appellant.

Fraud may be shown by circumstantial evidence. 59 Ark. 625; 52 Ark. 470. The close relationship of the parties to the transfer, together with other circumstances in the case, raised a presumption of fraud, and cast the burden on appellees to disprove same. 57 Am. Dec. 577; 50 Ark. 289; 55 Ark. 721; 46 Ark. 550; Wait, Fr. Con. §§ 300–301; Bump, Fr. Con. pp. 54–55. In no event would the daughter be entitled to more than her money and interest thereon. 16 Ohio St. 510. Having held out the funds of his "secret trust" as his own, and induced creditors to contract with reference to them, he cannot now withdraw these funds from their reach after such a lapse of time. 28 S. W. 147; 21 S. W. 529; 62 Ark. 32; 50 Ark. 46; 94 U. S. 22.

*W. C. Rodgers,* for appellees.

The objection that an answer is not verified cannot be raised on appeal for the first time. 29 Ark. 500, 502. There is no burden of proof cast upon appellees by reason of their relationship. As a creditor or purchaser for value in good faith, the child or parent stands upon the same footing as third persons, and the law as fully protects their rights. 82 Wis. 382; 46 Pac. 293; 63 Mich. 575; 5 Kas. App. 456; 74 Mich. 191; 104 Ind. 373; 64 Ia. 577; 104 U. S. 530. The burden is

39

on the one alleging fraud.    37 Ark. 145, 149; 69 Ia. 598; 68 Vt. 360; 26 Ore. 394; 65 Wis. 153; 38 Ark. 419, 427; 11 Wash. 550.    Insolvency raises no presumption that a payment of a *bona fide* debt is fraudulent.    26 Ark. 20.

BUNN, C. J.    This is a bill in equity to enjoin the Howard County Bank from paying out certain funds  therein deposited to the credit of Mayme Smith, and subject to her order and that of her father, J. F. Smith, acting as her agent, she residing in the state of Mississippi; and to subject and appropriate the same, as the money of said J. F. Smith, to the payment of the plaintiff's judgment against him, which is largely in excess of the amount so deposited.

The evidence and pleading show that J. F. Smith was insolvent, and the main issue in this case is whether the said fund in bank is the property of the daughter, Mamye Smith, or the property of the father, J. F. Smith, the bill alleging that the same was deposited in her name and as  her money in fraud of his creditors, the same belonging to him in fact.

J. F. Smith, in his answer and testimony, shows that his first wife, the mother of his said daughter, Mamye Smith, her only child, died in 1874, intestate, possessed of a tract of land, which he soon after sold for $400, and a house and lot in Paraclifta, which he sold in 1876 for $1,300, part of which he invested in a farm, which he improved, so that in 1883, or about ten years before giving his testimony, he sold for $2,500.    He shows also that he received from his said first wife's estate about $500 in cash (date not named), and that he sold a piano and a horse belonging to his said daughter for $400, which was part of the $1,500 originally deposited to the credit of his daughter in said  bank, which, with ten per centum per annum interest, made up his indebtedness to his daughter.    He shows also that in his settlement with Hill, Fontaine & Co., his principal creditor, he received in cash from them to pay his home creditors the sum of $5,500, $3,700 of which he paid to his daughter on the debt of $7,000, and of this sum he  paid $2,-200 directly to her, and deposited in said bank to her credit the sum of $1,500; that he drew out of said bank in her name and for her from time to time until there remained the sum enjoined herein.

The allegation against him is, in effect, that the said money was and is his own, and not his daughter's, and that he caused it to be thus transferred to cheat, hinder and delay his creditors; and in response to this charge .he attempts to show that the money is in fact not his, but the property of his daughter, and also her title thereto by the statement of facts recited above, with the further statement that he gave no note or other writing evidencing his indebtedness to his daughter, but that he used the funds with her full knowledge and consent, and that he was never her statutory guardian.

From his own statement he does not show that the proceeds of the land and the house and lot belonged to his daughter, while it may be conceded that the $500 derived from the grand father's estate and the $400 for the piano and horse were hers.

J. F. Smith could not lawfully sell the tract of land and the house and lot—the inheritance of his daughter—that is, he could not sell the fee in the same, which belonged to her. We may assume that he owned a curtesy right in both, and could, of course, sell that; but the proceeds of such sale would not belong to his daughter, but to himself. Now, then, since the $2,200 and the amount drawn out of the deposit more than cover the amount he shows he could have received of her money, it follows that the sum in bank is not hers but his, and of course subject to the claims of his creditors—that is to say, the judgment of the appellants, which is largely in excess of said sum.

The testimony of J. T. Conway, so far as it goes, tends to sustain this conclusion.

The decree is therefore reversed, and decree is entered here that the bank will pay over said sum to the appellant, or so much thereof as will satisfy their judgment, $1,739, and interest.

HUGHES and WOOD, JJ., dissenting.